# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 22, 2010

## STATE OF TENNESSEE v. ROGER STEPHEN RINER

**Appeal from the Criminal Court for Davidson County**
**No. 2008-D-3892    Mark J. Fishburn, Judge**

---

**No. M2009-00579-CCA-R3-CD - Filed September 23, 2010**

---

Appellant, Roger Stephen Riner, was convicted by a Davidson County Jury of first degree murder, felony murder, and aggravated robbery. The trial court merged the felony murder conviction with the first degree murder conviction. Appellant was sentenced to life for the first degree murder conviction and ten years for the aggravated robbery conviction, to be served consecutively to the life sentence. On appeal, the following issues are presented for our review: (1) whether the trial court erred in denying the motion for judgment of acquittal; (2) whether the trial court erred by allowing certain photographs of the victim's injuries to be admitted as exhibits; (3) whether the trial court erred by allowing the jury to view Appellant's multiple tattoos; and (4) whether the trial court improperly ordered consecutive sentencing. After a thorough review of the record, we determine that the evidence was sufficient to support the convictions and that the trial court properly ordered consecutive sentencing. Further, Appellant waived the remaining issues for failure to include the motion for new trial and/or transcript of the motion for new trial in the record on appeal and failed to establish plain error by the trial court with respect to these issues. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Thomas T. Overton, Nashville, Tennessee, for the appellant, Roger Stephen Riner.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark S. Fulks, Assistant Attorney General; Victor S. Johnson, District Attorney General, Kathy Morante and Jan Norman, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On August 24, 2005, Gary Melton was a guest at the Executive Inn on Murfreesboro Road in Nashville, Tennessee. Sometime that day, Mr. Melton met Appellant, who was homeless, near Riverfront Park. Appellant was wearing overalls and was heavily tattooed. Mr. Melton asked Appellant if he wanted to come stay with him at the hotel. Appellant agreed. The men went to a grocery store to buy some food, then went to the hotel room. Later they walked to a convenience store to buy some beer. The next morning, the two men had sex. Appellant left around noon to "go try and get money" to help pay for the hotel room.

Around 10:00 p.m. on the night of August 25, 2005, Jeff Richardson was on patrol as a security guard in the Murfreesboro Road area. Mr. Richardson was pulling his car into a parking lot when he saw the victim and Appellant approaching each other on foot from opposite directions. Mr. Richardson watched in horror as Appellant passed by Michael J. Kowalski, the victim. Appellant passed the victim, turned, and pushed him from behind, knocking the victim down a steep embankment next to a bridge. Appellant then followed the victim into the ravine. Several minutes later, Mr. Richardson saw Appellant emerge from the ravine area, dust himself off, and cross Murfreesboro Road toward the Taco Bell. Appellant was wearing overalls with no shirt, had dark hair, and tattoos on his back. Mr. Richardson called the non-emergency number for the Metropolitan Police Department to report that he had seen a fight.

When police arrived on the scene, they saw the victim's body in the ravine. Officer Jerry Hutcherson was the first responder to the call informing him that someone had been pushed over the bridge. When he saw the victim's body, Officer Hutcherson called EMS and secured the scene. Officer Hutcherson later went to the Executive Inn where he interviewed Mr. Melton who confirmed that Appellant had been a guest in his room. Mr. Melton had not seen Appellant since earlier that night. Witnesses at or near the scene described Appellant as a white male, black male, and light-skinned black male, but all of the descriptions included Appellant's attire as overalls with no shirt.

Captain Vincent Rodriguez of the Nashville Fire Department responded to the EMS call. When he arrived on the scene, the victim was unconscious, bloody, and had shallow respirations. Captain Rodriguez thought that the victim had a faint pulse but soon discovered that the victim had a pacemaker installed in his body. Another paramedic, William Jones,

assisted in assessing the victim's injuries. There was blood splattered all around the area and what appeared to be a wallet with various cards and personal effects strewn about.

Officer Johnny Lawrence of the Metropolitan Nashville Police Department was responsible for processing the crime scene. During the investigation, officers had to employ the use of a light truck due to heavy fog in the area. Officers collected a large chunk of stone, a wallet, and some personal effects that were scattered on the ground around the site of what appeared to be a violent assault.

Investigator Roy Dunnaway was appointed to lead the investigation. Sergeant Joseph Winter was the assistant investigator. When they arrived on the scene, the victim was lying face up in the ravine under the bridge, taking shallow breaths. The victim appeared to have been severely beaten. The police issued a "be on the lookout" ("BOLO") for a "tan, white male, no shirt, multiple tattoos, and bib overalls."

The next morning, around 7:00 a.m., Darrell Kraft, a cameraman with Channel 2 news, heard about the crime and went to the crime scene to get footage for a news story. Reporter Scott Fralik accompanied him to the scene. After shooting video, the two men headed back to the television station when they noticed a man at a nearby Shell station that matched the description of the suspect. They flagged down a police officer as they videotaped footage of Appellant. The tattoos that covered Appellant's body were visible in the videotaped footage. At the time of his arrest, Appellant was less than one mile from the crime scene.

Sergeant Winter advised Appellant of his *Miranda* rights. At the time of the arrest, Appellant had scratches on his body. Officers interviewed Appellant. During the interview, Appellant admitted that he had stayed in a hotel room at the Executive Inn with Mr. Melton. Appellant also admitted that he was in the area at the time of the murder. However, Appellant denied seeing the victim and claimed that he had not been in a fight the night before. Appellant claimed that he got scratches and bruises because he had gone into the woods to find a place to sleep that night. When confronted with eyewitness accounts that placed Appellant at the scene of the murder, Appellant discounted the stories, telling officers that it was their word against Appellant's as to what actually happened.

The items that were recovered from the crime scene were sent to the Tennessee Bureau of Investigation for analysis. They included a rock, a wallet, some clothing, and a baseball cap. The rock included DNA that belonged to the victim. A subsequent test employing new technology, led to the discovery of Appellant's DNA on the bloody rock that was discovered near the victim's body. There was an insufficient sample on the overalls to detect any DNA.

Appellant was indicted in January of 2006 by the Davidson County Grand Jury for the felony murder and aggravated robbery of the victim. A superceding indictment was issued in November of 2008, indicting Appellant with premeditated first degree murder, felony murder, and aggravated robbery. At trial, the victim's sister, Sandra Kowalski, explained that her brother was mentally disabled. According to Ms. Kowalski, the victim functioned well in certain situations but still lived with his parents the majority of the time. The victim worked at Kroger and was in charge of retrieving shopping carts from the parking lot. When he got paid, the victim would often get a hotel room in the Antioch area because he had grown up there and it was familiar to him.

An autopsy revealed that the victim suffered several lacerations to both sides of his face and head, as well as scrapes and abrasions on his nose, hemorrhages around his eyes, multiple contusions on his neck, multiple contusions and abrasions across his upper back and base of his neck, multiple abrasions and contusions of his left collarbone and forearms, and several abrasions on his legs and ankles. The victim had a severe skull fracture and broken bones in the left side of the face. The victim also suffered from a broken mandible and broken nose. In fact, the entire front of the victim's face was fractured and separated from the back of his skull. According to the medical examiner, the victim died of multiple blunt force trauma injuries to the head and neck. The injuries were consistent with being inflicted with a large, jagged rock.

After hearing the evidence, the jury convicted Appellant of all charges. Appellant was sentenced to life for the first degree murder conviction. The trial court merged the felony murder conviction with the first degree murder conviction. After a sentencing hearing, the trial court sentenced Appellant to ten years for the aggravated robbery conviction, to be served consecutively to the life sentence.

Appellant's motion for new trial was denied by the trial court. Neither the motion nor the transcript of a hearing on the motion appears in the record on appeal. Appellant filed a timely notice of appeal. On appeal, Appellant argues that the trial court: (1) improperly denied a motion for judgment of acquittal; (2) improperly admitted autopsy photographs into evidence; (3) erred by allowing the jury to view Appellant's tattoos; and (4) imposed an improper sentence.

*Analysis*

*Motion for New Trial*

At the outset of our analysis, we note, as pointed out by the State, that Appellant has not included the motion for new trial or the transcript on the hearing of the motion for new

trial in the appellate record. The record herein contains an order filed June 4, 2009, denying the motion for new trial. Then, the record contains an "Amended Motion for Judgment of Acquittal or, in the Alternative, for New Trial," filed on June 12, 2009. This motion alleges that the evidence was insufficient; that photographs of the victim should not have been admitted into evidence; that the cumulative effect of the errors requires reversal of the convictions; that the trial court erred in determining that there was sufficient evidence of premeditation and robbery; and that it was error for the trial court to allow the jury to see Appellant's tattoos. Appellant's notice of appeal was filed that same day. There is no order disposing of the "Amended" motion for new trial.

Pursuant to the Rules of Appellate Procedure, the Appellant is responsible for procuring the relevant transcripts and filing them within sixty days of the notice of appeal or notifying the trial court clerk that no transcript will be filed. Tenn. R. App. P. 24(b). Moreover, the Appellant is responsible for ensuring that a complete and adequate record is prepared and transmitted on appeal. *See, e.g., State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). If an incomplete record is presented to this Court, the Appellant risks waiving issues raised on appeal. *See, e.g., State v. Cindy L. Holder*, No. E2000-01191-CCA-R3-CD, 2003 WL 367244 (Tenn. Crim. App., at Jackson, Feb.21, 2003). Tennessee Rule of Criminal Procedure 33(b) provides that "[a] motion for a new trial shall be *in writing* or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial." Further, a trial court loses jurisdiction with the filing of a notice of appeal. *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996).

Appellant herein has been given ample opportunity, both at the beginning of this appeal and in response to the State's brief, to cure the defects in the record, but he has neglected to do so. The alleged errors about which the Appellant complains would necessarily require this Court to review what was contained in the motion for new trial and what transpired during the hearing on the motion for new trial. However, because Appellant neglected to procure those transcripts and ensure that the record contained his original motion for new trial, he has waived consideration of the issues with the exception of those regarding sufficiency of the evidence and sentencing. In such a case, the judgment of the trial court must be presumed correct. *State v. Bennett*, 798 S.W.2d 783, 789 (Tenn. Crim. App. 1990). Moreover, we are precluded from considering the issues in Appellant's amended motion for new trial unless they rise to the level of plain error. It was filed after the trial court ruled on the motion for new trial and on the same day that Appellant filed a notice of appeal in this Court. The trial court was, at that time, without jurisdiction to consider the motion. *State v. Hatcher*, 310 S.W.3d 788, 801-02 (Tenn. 2010); *Pendergras*s, 937 S.W.2d at 837.

Further, Appellant's remaining issues involving whether the trial court improperly admitted photographs of the autopsy and improperly allowed the jury to view Appellant's tattoos do not rise to the level of plain error. In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting this Court's plain error test set forth in *State v. Adkisson*, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)); *see also* Tenn. R. Crim. P. 36(b).

Appellant complains that the trial court improperly admitted autopsy photographs of the victim. The admissibility of photographs is a matter entrusted to the sound discretion of the trial court. *State v. Porterfield*, 746 S.W.2d 441, 450 (Tenn. 1988). As such, it will not be overturned on appeal absent an abuse of discretion. *Id.* Appellant has failed to show that the trial court violated a clear and unequivocal rule of law with respect to the trial court's decision. Because Appellant cannot demonstrate all five factors required for plain error analysis this issue is waived.

Appellant also argues that the trial court erred by displaying Appellant's tattoos to the jury. Again, Appellant has failed to show that the trial court breach a clear and unequivocal rule of law. This Court has held that a trial court may allow a jury to see "certain aspects of an individual's physical appearance." *State v. Torrezz Talley*, No. W2003-02237-CCA-R3-CD, 2006 WL 2947435, at *15 (Tenn. Crim. App., at Jackson, Oct. 16, 2006), *perm. app. denied*, (Tenn. Mar. 19, 2007) (citing *State v. Alejandro Rivera*, No. E2002-00491-CCA-R3-CD, 2003 WL 22843170, at *20 (Tenn. Crim. App., at Knoxville, Dec. 1, 2003), *perm. app. denied*, (Tenn. Mar. 16, 2009)). Appellant has failed to establish plain error. These issues are waived.

*Sufficiency of the Evidence*

Appellant complains on appeal that the trial court erred in denying the motion for judgment of acquittal as to "each count of the indictment." Specifically, Appellant argues that "the uncorroborated testimony of Jeff Richardson, [and] the eyewitnesses in this case, does [sic] not support the findings of the jury or the trial judge." Further, Appellant contends that there is not evidence of premeditation or that he committed a robbery. The State disagrees.

According to Tennessee Rule of Criminal Procedure 29(b):

On Appellant's motion on its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

This Court has noted that "[i]n dealing with a motion for judgment of acquittal, unlike a motion for a new trial, the trial judge is concerned only with the legal sufficiency of the evidence and not with the weight of the evidence." *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). The standard for reviewing the denial or grant of a motion for judgment of acquittal is analogous to the standard employed when reviewing the sufficiency of the convicting evidence after a conviction has been imposed. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995).

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reevaluating the evidence when considering the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

### A. First Degree Murder

First degree murder is described as:

(1) A premeditated and intentional killing of another; [or]

(2) A killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy;
. . . .

T.C.A. § 39-13-202(a). Tennessee Code Annotated section 39-13-202(d) provides that:

"[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

An intentional act requires that the person have the desire to engage in the conduct or cause the result. T.C.A. § 39-11-106(a)(18). Whether the evidence was sufficient depends entirely on whether the State was able to establish beyond a reasonable doubt the element of premeditation. *See State v. Sims*, 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the killing. *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006); *see also State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998).

Premeditation may be proved by circumstantial evidence. *See, e .g., State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992). Our supreme court has identified a number of circumstances from which the jury may infer premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed; (6) destruction or secretion of evidence of the killing; and (7) a defendant's calmness immediately after the killing. *See State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997); *Pike*, 978 S.W.2d at 914-15. This list, however, is not exhaustive and serves only to demonstrate that premeditation may be established by any evidence from which the jury may infer that the killing was done "after the exercise of reflection and judgment." T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

One learned treatise states that premeditation may be inferred from events that occur before and at the time of the killing:

> Three categories of evidence are important for [the] purpose [of inferring premeditation]: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

2 Wayne R. LaFave, Substantive Criminal Law § 14.7(a) (2d ed. 2003).

In the case at hand, the jury concluded that Appellant acted with premeditation when killing the victim by shoving him over the side of a ravine from behind and beating him to death with a rock. The victim sustained multiple injuries and his wallet was found nearby, the contents of which were strewn about the murder scene. Additionally, Appellant's DNA and the victim's blood were found on a rock recovered from the scene of the crime. The rock was suspected to be the murder weapon. Appellant was seen exiting the ravine and walking calmly across the street to the crowd near Taco Bell.

As stated above, the trier of fact is determines the credibility of the witnesses, any issues of fact, and the weight to be given the evidence presented at trial. *Pruett*, 788 S.W.2d at 561. The jury clearly found that Appellant acted both intentionally and with premeditation when he killed the victim. We conclude that when the evidence is viewed in a manner that favors the State, there is sufficient evidence to support the jury's verdict with regard to the first degree murder conviction.

### B. Aggravated Robbery

Appellant complains that there was no evidence that he robbed the victim. The State contends that the evidence was sufficient to establish aggravated robbery.

Pursuant to Tennessee Code Annotated section 39-13-401, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Aggravated robbery is robbery that is "accomplished with a deadly weapon

or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402.

The proof at trial established that Appellant left the hotel room he was staying in with Mr. Melton to go get some money to help pay for the cost of the room. Appellant was seen sometime later that evening shoving the victim off of the road into a ravine. Shortly thereafter, Appellant exited the ravine. The victim was found in the ravine with the contents of his wallet scattered about. The victim had been beaten to death with a large rock. When Appellant was arrested, he had ten dollars in his pocket. He told police he got the money through panhandling. The victim's sister testified that the victim had gotten paid on the day of his murder. The jury must have discredited Appellant's testimony. As stated above, the trier of fact is determines the credibility of the witnesses, any issues of fact, and the weight to be given the evidence presented at trial. *Pruett*, 788 S.W.2d at 561. We conclude that the evidence when viewed in the light most favorable to the state is sufficient for a rational jury to find that an aggravated robbery was committed by Appellant. Therefore, this issue is without merit.

## *C. Felony Murder*

Appellant argues that because there was no proof of an underlying felony, he could not be convicted of felony murder. The State argues that the evidence supported the conviction for felony murder.

Felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." T.C.A. § 39-13-202(a)(2). Tennessee Code Annotated section 39-13-202 also provides that "[n]o culpable mental state is required for conviction under subdivision (a)(2) . . . except the intent to commit the enumerated offenses or acts." T.C.A. § 39-13-202(b). Additionally, the death must occur "in the perpetration of" the enumerated felony. *State v. Hinton*, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000) (citations omitted). The killing may precede, coincide with, or follow the felony and still be in the perpetration of the felony, so long as there is a connection in time, place, and continuity of action. *State v. Buggs*, 995 S.W.2d 102, 106 (Tenn. 1999). If the underlying felony and killing were part of a continuous transaction with no break in the chain of events and the felon had not reached a place of temporary safety between the events, felony murder is sufficiently established. *State v. Pierce*, 23 S.W.3d 289, 294-97 (Tenn. 2000). Proof of the intention to commit the underlying felony and at what point it existed is a question of fact to be decided by the jury after consideration of all the facts and circumstances. *Buggs*, 995 S.W.2d at 107.

Again, the proof at trial showed that the victim was beaten to death with a rock. When the victim was discovered, the contents of his wallet were strewn about the blood-spattered scene. Appellant told Mr. Melton that he was leaving the hotel to try to get some money. Appellant was later arrested with a ten dollar bill in his pocket. He claimed that he got the money through panhandling. The jury clearly did not believe the defense theory and instead accredited the testimony of the State's witnesses. There was sufficient evidence for the jury to determine that Appellant killed the victim during the perpetration of a felony, aggravated robbery. Appellant is not entitled to relief on this issue.

*Sentencing*

Lastly, Appellant complains that the trial court erred in sentencing. Appellant's entire argument consists of the following statement: "Appellant contends that the ten year sentence for aggravated robbery consecutive to a life sentence was excessive." The State disagrees, countering first that Appellant waived the issue on appeal for failure to provide an adequate record on appeal. Appellant later supplemented the record with the transcript of the sentencing hearing. The State filed a reply brief, contending that Appellant still waived the issue for failure to provide an adequate argument. In any event, the State alleges that the trial court properly sentenced Appellant. Appellant did not file a reply brief.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

A trial court may impose consecutive sentences upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

Appellant was convicted of first degree murder, a Class A felony; felony murder, a Class A felony; and aggravated robbery, a Class B felony.

In this case, the trial court based the imposition of consecutive sentencing on Tennessee Code Annotated section 40-35-115(b)(4). As stated above, this section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human

life, and no hesitation about committing a crime in which the risk to human life is high."
T.C.A. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive
sentences on the basis that he is a dangerous offender, the trial court must find that the
resulting sentence is reasonably related to the severity of the crimes, necessary to protect the
public against further criminal conduct, and in accord with the general sentencing principles.
*See Imfeld*, 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).
After making it clear that the trial court had considered the evidence at trial and sentencing
as well as the presentence report, the principles of sentencing, the nature and characteristics
of the criminal conduct involved, the mitigating factors, sentencing practices in Tennessee,
the Appellant's statements on his presentence report and the potential for rehabilitation, the
trial court made the following statement with regard to consecutive sentencing:

> The Court has to make three additional findings, the first of which is that the
> circumstances surrounding the commission of the offense are aggravated. The
> Court feels that is clearly established by the facts of this case. I don't know
> how many felony murders have come before [t]his Court, but certainly this is
> one of the more egregious ones that [t]his Court has ever heard.

> Throwing [the victim] over the road, the bridge, onto the embankment
> below I'm sure would have been more than sufficient to accomplish the
> robbery in this case. But for him to take the time and effort - - I agree with the
> State this was not just a rock. This was a sizable stone, a small boulder, and
> to, in [t]he Court's mind cold bloodedly [sic] and callously for absolutely no
> reason at all, crush [the victim's] skull for reasons I don't guess will ever be -
> - - I know it will never be understood but the motivation for doing it in the first
> place is beyond [t]he Court's ability to comprehend.

> The Court also finds that the - - the other two things that [t]he Court has
> to find is that the aggregate length of the sentence is reasonable for the offense
> for which the defendant stands convicted. The Court finds that certainly
> consecutive sentencing would be justified under that.

> The third thing [t]he Court has to find is that confinement for an
> extended period of time is necessary to protect society from the defendant's
> unwillingness to lead a productive life, and the defendant's resort to criminal
> activity in furtherance of an antisocietal behavior.

> As the defense points out, confinement is already going to be extensive.
> The Court actually has a concern about there being any chance of [Appellant]
> getting back into society. . . . I think [Appellant] is a scary, dangerous, and, .

-13-

. . , evil person, who I have observed throughout the many proceedings in this courtroom during the course of the trial, as well as here at the sentencing hearing here today, - - and within 12 hours of the murder, in giving his statement to the police, he was in good spirits, laughing and joking with the officer, and had absolutely no evidence of any remorse from the time that this event occurred to the very moment before [t]his Court today.

Therefore, [t]he Court finds that all three factors apply and will run the sentence consecutively.

From the record, we determine that the trial court correctly applied the *Wilkerson* factors on the record. The record does not preponderate against the imposition of consecutive sentencing. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE